**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


Steven J. Roy

    v.                                    Case No. 13-cv-438-PB

New Hampshire Department of
Corrections; William Wrenn,
Commissioner, New Hampshire
Department of Corrections;
Richard Gerry, Warden, New
Hampshire State Prison; and
Fred Nichols


**REPORT AND RECOMMENDATION**


    Steven Roy, an inmate in the New Hampshire State Prison ("NHSP"), has sued in four counts, seeking to recover for defendants' use of copyrighted software he developed during the course of his incarceration. Before me for a report and recommendation is defendants' motion to dismiss. Plaintiff objects. For the reasons that follow, I recommend that defendants' motion to dismiss be granted in part and denied in part.

## I. **The Legal Standard**

    Under Rule 12(b)(6), I must accept the factual allegations in plaintiff's complaint as true, construe reasonable inferences in his favor, and "determine whether the factual allegations in

the plaintiff's complaint set forth a plausible claim upon which relief may be granted."  Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citation omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Analyzing plausibility is "a context-specific task" in which courts rely upon their "judicial experience and common sense."  Id. at 679.

## II. **Background**

The facts recited in this section are drawn from plaintiff's amended complaint, document no. 45.

Before he was sentenced to prison, Roy ran a software company.  So too did Bill Johnson, who, at all times relevant to this matter, was also an inmate at the NHSP.  From 2001 onward, while an inmate at the NHSP, Johnson wrote business software. He did so at times when he was not engaged in his prison job because software development was not permitted during his prison work time.

In mid 2004, the manager of the NHSP furniture shop hired Roy as a clerk, but quickly reassigned him to work as a tailor.

He was, however, given permission to "play" with furniture-shop computers on unpaid time.  Among other things, Roy worked on business modules that Johnson had developed, many of which were then being used by the furniture shop and one of which was being tested by the business office of New Hampshire Correctional Industries ("NHCI"), a for-profit manufacturing division of the New Hampshire Department of Corrections ("DOC").  Development of Johnson's business modules – by whom, the complaint does not specify – continued into 2006.  By early 2007, Johnson and Roy had completed all the basic features of the business software they were developing and inserted copyright notices into all of the modules, claiming joint authorship of that software.

In May of 2006, a new manager of the furniture shop made Roy a clerk.  Two months later, after all of the NHCI shops failed an audit, the furniture-shop manager assigned Roy to work as the inventory clerk and directed him to solve the furniture shop's accounting problems.

At some point, the complaint does not say when, Fred Nichols became the director of NHCI and renamed it "GranitCor." After seeing a demonstration of the software Johnson and Roy had developed, Nichols decided that he wanted it to be used by all of GraniteCor's shops, from a central network.  Johnson and Roy

made the changes necessary to accomplish that goal, and the resulting software package was named "JOINT."

In July of 2011, JOINT was put into use by most of the GraniteCor shops.  Ultimately, it was deployed to 35 work stations used by both staff and inmates.  After deployment, Roy's duties included training and assisting users of JOINT and performing maintenance on the software.

In March of 2012, Nichols noticed the copyright notice that Johnson and Roy had placed in the JOINT software.  Almost immediately thereafter, Johnson was placed on indefinite leave of absence from his prison job.  In response, Johnson and Roy began the process of registering their purported copyright in JOINT.  Their registration materials included affidavits that, in their view, established that the JOINT software was not produced as a work for hire, as that term is used in copyright law.[1]  The Copyright Office issued a certificate of registration that was effective as of June 11, 2012.

In the late summer of 2012, Roy came to believe that GraniteCor was no longer using JOINT.  In May of 2013, he was

---

[1] The Copyright Act provides that "[i]n the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright."  17 U.S.C. § 201(b).

shown a document dated March 2013 that was generated by JOINT
and signed by Nichols.  That document demonstrated that
GraniteCor was using the JOINT software.  Shortly thereafter,
Roy sent Nichols an inmate request slip demanding that
GraniteCor cease and desist from using or modifying JOINT, and
he sent a letter to the office of the Attorney General asking
for the same relief.  However, GraniteCor continued to use JOINT
on at least four computers until mid January of 2014, when it
stopped using that software.

Based upon the foregoing, Roy asserts claims for: (1)
copyright infringement (claim #1); (2) conversion (claim #6);
(3) unjust enrichment (claim #7); and (4) violation of the due-
process clause of the Fourteenth Amendment to the United States
Constitution (claim #9).[2]  He seeks both monetary damages and
injunctive relief.


### III. Discussion

Defendants move to dismiss under a variety of legal
theories.  In this section, I consider each of plaintiff's

---

[2] Claims #1, #6, and #7 were asserted in Roy's original
complaint and addressed in the report and recommendation dated
December 16, 2013, document no. 11.  Claim #9 was first asserted
in Roy's Amended Civil Complaint, document no. 45.

claims in turn.

A.   Claim #1

In claim #1, plaintiff asserts that the DOC and Nichols are liable to him for copyright infringement.[3]  He is suing Nichols in both his individual and official capacities, and he frames his infringement claim this way:

> [D]efendants Fred Nichols and the N.H. Department of Corrections, knowing that JOINT was a copywritten work, (a) engaged in the unauthorized creation of derivative works of JOINT, (b) used DOC funds to pay for the creation of unauthorized derivative works of JOINT, (c) utilized and modified JOINT without the plaintiff's permission after 6/11/2012, (d) copied JOINT from a secure mainframe . . . or other network location to user computers and copied it into the CPU's of those computers when they ran it after 6/11/2012; (e) secretly used JOINT after the 8/28/2012 alleged network shutdown, (f) failed to cease using JOINT when notified to do so, and (g) did all of this for commercial gain within the DOC's wholly owned GraniteCor business.

Am. Civ. Comp. (doc. no. 45) 11.

In their motion to dismiss, defendants argue that: (1) plaintiff has failed to state a claim for copyright infringement because he did not own the copyright on JOINT, owing to its status as a work for hire; (2) plaintiff is equitably estopped

---

[3] In a previous report and recommendation, this court characterized claim #1 as being asserted against all four defendants, see doc. no. 11, at 2-3, but in his amended complaint, Roy makes it clear that he is asserting claim #1 against only the DOC and Nichols.

from bringing an infringement claim; (3) plaintiff granted the DOC an irrevocable license to the JOINT software; (4) Nichols is entitled to qualified immunity from claims brought against him in his individual capacity; and (5) the DOC, and Nichols in his official capacity, are entitled to sovereign immunity from an award of damages.  Defendants' immunity arguments are meritorious, but do not entitle them to a complete dismissal of plaintiff's copyright-infringement claims.

### 1. Qualified Immunity

"Because the 'qualified immunity defense is, in part, an immunity from trial as well as an immunity from damage awards,'" Cady v. Walsh, 753 F.3d 348, 358 (1st Cir. 2014) (quoting Stella v. Kelley, 63 F.3d 71, 73 (1st Cir. 1995)), I begin with that theory.  "As the Supreme Court recently reiterated, '[a] government official sued under [42 U.S.C.] § 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'"  Hunt v. Massi, 773 F.3d 361, 367 (1st Cir. 2014) (quoting Carroll v. Carman, 135 S. Ct. 348, 350 (2014)).  While typically employed in the context of claims brought under § 1983, "[c]ourts have considered the doctrine of qualified immunity when a particular area of copyright law was

not clearly established." Ass'n for Info. Media & Equip. v.
Regents of Univ. of Cal., No. 2:10-cv-09378-CBM (MANx), 2012 WL
7683452, at *6 (C.D. Cal. Nov. 20, 2012) (citing Molinelli-
Freytes v. Univ. of P.R., 792 F. Supp. 2d 150, 157 (D.P.R.
2011); Campinha-Bacote v. Bleidt, No. H-10-3481, 2011 WL
4625394, at *3 (S.D. Tex. Oct. 3, 2011)); see also Chavez v.
Arte Publico Press, 59 F.3d 539, 547-48 (5th Cir. 1995), vacated
on other grounds by Univ. of Hous. v. Chavez, 517 U.S. 1184
(1996).

The doctrine of qualified immunity "'gives government
officials breathing room to make reasonable but mistaken
judgments,' and 'protects all but the plainly incompetent or
those who knowingly violate the law.'" Hunt, 773 F.3d at 367
(quoting Carroll, 135 S. Ct. at 350).  The court of appeals has
described the mechanics of qualified immunity this way:

> The two-step procedure for assessing a plea of
> qualified immunity at the motion to dismiss stage is
> well-rehearsed.  See, e.g., Feliciano-Hernández v.
> Pereira-Castillo, 663 F.3d 527, 532-33 (1st Cir.
> 2011); Eldredge [v. Town of Falmouth, MA], 662 F.3d
> [100,] 104-05 [(1st Cir. 2011)].  On the basis of the
> pleadings, we must decide "(1) whether the facts
> alleged or shown by the plaintiff make out a violation
> of a constitutional right; and (2) if so, whether the
> right was 'clearly established' at the time of the
> defendant's alleged violation."  Maldonado [v.
> Fontanes], 568 F.3d [263,] 269 [(1st Cir. 2009)]
> (quoting Pearson v. Callahan, 555 U.S. 223, 232
> (2009)).

> The "clearly established" inquiry, in turn, has two related aspects. One aspect focuses exclusively on the clarity of the law at the time of the alleged violation. "To overcome qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Id. (alteration in original) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The other aspect considers the specific facts of the case at bar. The "clearly established" inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)) (internal quotation marks omitted). Thus, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." Maldonado, 568 F.3d at 269 (first alteration in original) (emphasis added) (quoting Brosseau, 543 U.S. at 199) (internal quotation marks omitted).

Rocket Learning, Inc. v. Rivera-Sánchez, 715 F.3d 1, 8-9 (1st Cir. 2013) (parallel citations omitted). "In other words, 'existing precedent must have placed the . . . constitutional question beyond debate.'" Hunt, 773 F.3d at 368 (quoting Carroll, 135 S. Ct. at 350).

Finally, "federal courts have discretion to administer the components of the qualified immunity test in the order that they determine 'will best facilitate the fair and efficient disposition of each case.'" Rocket Learning, 715 F.3d at 9 (quoting Pearson, 555 U.S. at 242). Thus, "[w]here the court

9

can 'quickly and easily decide that there was no violation of clearly established law,' it need not 'turn[ ] to the more difficult question [of] whether the relevant facts make out a constitutional question at all.'"  Id. (quoting Pearson, 555 U.S. at 239).

Here, the court begins with the "clearly established" inquiry, and the dispositive question is whether a reasonable official in Nichols's shoes, under the circumstances of this case, would have known that he was violating Roy's rights under the Copyright Act by engaging in the conduct alleged in claim #1.  To answer that question, the court must turn to the law of copyright.

"To establish copyright infringement, the plaintiff must prove two elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" Latin Am. Music Co. v. Media Power Grp., Inc., 705 F.3d 34, 38 (1st Cir. 2013) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)).  Thus, to have understood that he was violating Roy's right under the Copyright Act, it would have been necessary for Nichols to have understood that Roy owned a valid copyright in JOINT.

Roy has alleged that in March of 2012, Nichols learned that JOINT carried a copyright notice, and the court will assume, favorably to Roy, that when Roy asked Nichols to cease and desist from using JOINT in the spring of 2013, he informed Nichols that the copyright in JOINT had been registered.  When a copyright claim "is registered with the Copyright Office within five years of first publication of the work, the certificate of registration is prima facie evidence of ownership and the validity of the copyright."  Latin Am. Music, 705 F.3d at 38 (citing 17 U.S.C. § 410(c); Johnson v. Gordon, 409 F.3d 12, 17 (1st Cir. 2005)).  Based upon the foregoing, one might argue that by the spring of 2013, at the latest, a reasonable officer in Nichols's shoes would have understood that at least some of the conduct alleged in claim #1, such as making derivative works based on JOINT, violated a copyright on JOINT that was owned by Roy.

But this is far from an ordinary copyright infringement case, given Roy's status as a prisoner, the circumstances under which JOINT was written, and Nichols's knowledge of those circumstances.  In his complaint, Roy alleges that: (1) JOINT was written on DOC computers; (2) the final version was created in response to requests by Nichols for changes necessary for

JOINT to be used by all of GraniteCor's shops, see Am. Civ. Compl. (doc. no. 45) ¶ 20; and (3) at least some of Roy's work on and with JOINT was accomplished as a part of his prison job, see id. ¶ 29. In light of those circumstances, the court cannot say that a reasonable prison official in Nichols's position, even knowing of the copyright registration, would have known that it was possible, in the first instance, for Roy to have owned a copyright in JOINT.

That conclusion is reinforced by Judge Britt's decision in McKenna v. Lee, 318 F. Supp. 2d 296 (E.D.N.C. 2002). In that case, an inmate who created a design for an automobile license plate sued for copyright infringement, asserting that defendants (presumably prison officials) copied and published his design. See id. at 298. The court granted summary judgment to the defendants on grounds that the plaintiff was not the author of the license plate design, due to its having been created as a work for hire. See id. at 301. So, rather than placing Roy's ownership of a copyright in JOINT beyond debate, precedent tends to support defendants' side of the debate and the proposition that an inmate in Roy's position could not own the copyright on a work he authored while using prison-owned equipment, at the request of prison officials, and intended for use by the prison.

12

While McKenna suggests that works created by prisoners can be subject to the work-for-hire doctrine, plaintiff has not identified any case, and I have found none, in which a court has ruled that the work-for-hire doctrine was inapplicable to a copyright plaintiff in Roy's position.  Thus, there is no basis for determining that a reasonable official in Nichols's shoes would have understood that he was violating Roy's rights under the Copyright Act.  Accordingly, Nichols, in his individual capacity is entitled to qualified immunity from Roy's copyright-infringement claim.  See Molinelli-Freytes, 792 F. Supp. 2d at 156-58 (explaining that plaintiff would have difficulty establishing that defendant was not entitled to qualified immunity where application of work-for-hire doctrine in academic context was unsettled area of law); Ass'n for Info. Media, 2012 WL 7683452, at *6 (granting qualified immunity where "it [was] ambiguous whether the [defendant's] use was fair use under copyright law").  Because Nichols is entitled to qualified immunity from plaintiff's copyright-infringement claim, I recommend that defendants' motion to dismiss should be granted as to the individual-capacity copyright-infringement claim that plaintiff asserts against Nichols in claim #1.

### 2. Sovereign Immunity

Defendants next argue that the DOC and Nichols, in his official capacity, are protected by sovereign immunity from liability for civil damages on plaintiff's claim of copyright infringement.  Plaintiff contends that Congress has abrogated sovereign immunity for state defendants facing claims of copyright infringement.  He is mistaken.

The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."  Under the Eleventh Amendment, "absent waiver or valid abrogation [by Congress], federal courts may not entertain a private person's suit against a state." Va. Office for Prot. & Advocacy v. Stewart, 131 S. Ct. 1632, 1638 (2011).  Sovereign immunity also extends to state agencies and to state officials acting in their official capacities.  See Brait Builders Corp. v. Mass. Div. of Capital Asset Mgmt., 644 F.3d 5, 11 (1st Cir. 2011) (state agencies); Davidson v. Howe, 749 F.3d 21, 27 (1st Cir. 2014) (state officials acting in their official capacities).

The purported abrogation of sovereign immunity upon which plaintiff relies is expressed in the following statutory provision:

> Any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity, shall not be immune, under the Eleventh Amendment of the Constitution of the United States or under any other doctrine of sovereign immunity, from suit in Federal court by any person . . . for a violation of any of the exclusive rights of a copyright owner . . . or for any other violation under this title.

17 U.S.C. § 511(a); see also § 501(a) (defining entities potentially liable for copyright infringement to include "any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity").  Section 511 and the definition in § 501(a) were added to the Copyright Act by a 1990 amendment titled the Copyright Remedy Clarification Act ("CRCA"), Pub. L. No. 101-553, 104 Stat. 104 (1990).  The dispositive question here is whether the portion of the CRCA that purports to abrogate state sovereign immunity is legally valid.  It is not.

In National Association of Boards of Pharmacy v. Board of Regents, 633 F.3d 1297 (11th Cir. 2011), the court of appeals was presented with the very same question that faces this court, whether 17 U.S.C. § 511 was a valid abrogation of sovereign

15

immunity.  The court began by pointing out that

> Congress may abrogate the States' sovereign immunity
> when it (1) "unequivocally expresse[s] its intent to
> abrogate the immunity" through a "clear legislative
> statement," and (2) acts "pursuant to a valid exercise
> of [constitutional] power."

Id. at 1312 (quoting Seminole Tribe v. Florida, 517 U.S. 44, 55

(1996)).  Next, the court determined that Congress had

unequivocally expressed its intent to abrogate state sovereign

immunity from claims for copyright infringement.  See id. at

1313.  Then, the court turned to "the determinative question

before [it]: 'Was the Act in question passed pursuant to a

constitutional provision granting Congress the power to

abrogate?'"  Id. (quoting Seminole Tribe, 517 U.S. at 59).

In its analysis, the court identified two possible sources

of constitutional power: (1) the copyright and patent clause in

Article I; and (2) § 5 of the Fourteenth Amendment.  With regard

to the copyright and patent clause, the court explained that

"[t]he legislative history of the CRCA makes clear that Congress

intended to abrogate state sovereign immunity under its Article

I powers."  NABP, 633 F.3d at 1313.  Then, in reliance upon

Florida Prepaid Postsecondary Education Expense Board v. College

Savings Bank, 527 U.S. 627 (1999), the court held that "Congress

may not abrogate the States' sovereign immunity pursuant to the

Copyright and Patent Clause." 633 F.3d at 1315. Plaintiff does not argue that Article I gives Congress the power to abrogate state sovereign immunity but, rather, argues that

> based on <u>Seminole Tribe</u> . . ., Congress <u>must</u> have used its powers under § 5 of the 14th Amendment in passing the CRCA "clarifying" the Copyright Act to include States and State actors . . . because the Court in <u>Seminole</u> held: ONLY § 5 of the Fourteenth Amendment allows Congress to pass legislation abrogating Eleventh Amendment sovereign immunity.

Pl.'s Mem. of Law (doc. no. 48-1) 11 (emphasis in the original). That argument fails because the CRCA was enacted in 1990, six years <u>before</u> <u>Seminole Tribe</u> was decided, which means that Congress could not have had <u>Seminole Tribe</u> in mind when it passed the CRCA. <u>See</u> <u>Jacobs v. Memphis Conv. & Visitors Bureau</u>, 710 F. Supp. 2d 663, 671 (W.D. Tenn. 2010) ("Congress's reliance on Article I [in passing the CRCA] is unsurprising since passage of the Act preceded the 1996 decision in <u>Seminole Tribe</u> precluding abrogation of state immunity under Article I."). Be that as it may, defendants argue correctly, and plaintiff appears to concede, that the copyright and patent clause does not provide Congress with the power to abrogate state sovereign immunity. That leaves § 5 of the Fourteenth Amendment.

Section 1 of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or

property, without due process of law."  Section 5 provides that
"[t]he Congress shall have power to enforce by appropriate
legislation, the provisions of this article."  Indeed, "[i]t is
well established that § 5 grants Congress the authority to
abrogate state sovereign immunity for violations of the
Fourteenth Amendment."  NABP, 633 F.3d at 1315 (citing United
States v. Georgia, 546 U.S. 151, 158 (2006)).

Notwithstanding the theoretical availability of § 5 as a
constitutional basis for legislation abrogating state sovereign
immunity, "[t]he legislative history of the [CRCA] unambiguously
reveals that Congress intended to remove the states' sovereign
immunity by means of Article I – namely, the Copyright Clause –
rather than by means of § 5 [of the Fourteenth Amendment]."
Jacobs, 710 F. Supp. 2d at 671 (citation omitted).  Moreover,
"because the [CRCA] was undoubtedly passed pursuant to Article I
[it] therefore cannot be defended and sustained . . . under the
Fourteenth Amendment."  Id.; see also Coyle v. Univ. of Ky., 2
F. Supp. 3d 1014, 1019 (E.D. Ky. 2014) (ruling that the CRCA was
not a valid abrogation of sovereign immunity because it was
enacted under Congress's Article I power, not its power under §
5 the Fourteenth Amendment); Jehnsen v. N.Y. State Martin Luther
King, Jr., Inst. for Nonviolence, 13 F. Supp. 2d 306, 311

(N.D.N.Y. 1998) ("due to the fact that the copyright legislation was authorized by Article I and not the Fourteenth Amendment, Congress is without authority to abrogate state sovereign immunity for copyright cases").  In light of the Supreme Court's "disapprov[al] of attempts to justify the legitimacy of legislation abrogating state sovereign immunity on a constitutional basis different from that upon which Congress premised the abrogation at the time of the law's enactment," Jacobs, 710 F. Supp. 2d at 672 (citing Chavez v. Arte Publico Press, 204 F.3d 601, 605 (5th Cir. 2000)), and Congress's reliance upon its Article I powers when it enacted the CRCA, the purported abrogation of sovereign immunity in the CRCA is legally invalid.

Because Congress has not validly abrogated state sovereign immunity from claims for damages for copyright infringement, and because plaintiff does not even suggest that the State of New Hampshire has waived its sovereign immunity from such claims, I recommend granting defendants' motion to dismiss as to the claims for copyright-infringement damages that plaintiff asserts in claim #1 against the DOC and Nichols in his official capacity.

19

### 3. The Remaining Claims & Defenses

In addition to claiming damages for copyright infringement, plaintiff also seeks various forms of prospective injunctive relief from the DOC and from Nichols in his official capacity. Relief such as that is not barred by sovereign immunity.  See Virginia Office, 131 S. Ct. at 1638 (describing doctrine established by Ex parte Young, 209 U.S. 123 (1908)).  Defendants recognize as much, and defend against those claims on three other grounds, which they appear to have drawn from a case with striking factual similarities to this one, Le v. City of Wilmington, 736 F. Supp. 2d 842 (D. Del. 2010).

In Le, Judge Stark granted summary judgment to the defendants against a copyright-infringement plaintiff who, as a municipal employee, developed a "software program for use by the City's Department of Licenses and Inspections," 736 F. Supp. 2d at 845, and did so "exclusively on his own time in his own home," id., after being forbidden from working on the program while at work, see id.  At summary judgment, the defendants argued, successfully, that: (1) Le did not own a copyright in the software program because it was a work for hire, see id. at 851; (2) Le was estopped from asserting a copyright-infringement claim against the defendants, see id. at 852; and (3) "the

20

parties' conduct created in the City an implied and irrevocable license in the Work," id.  Defendants make all three of those arguments, and any one of them may prove to be meritorious. But, at this stage in the proceedings, all three arguments are premature.

To be sure, courts have dismissed copyright-infringement actions when a plaintiff's claim to ownership rests upon the work-for-hire doctrine and the complaint fails to allege adequate facts to support such a claim.  See, e.g., Ward v. Mitchel, No. 12-cv-3932 NC, 2013 WL 1758840, at *4 (N.D. Cal. Apr. 24, 2013); Morris v. Atchity, No. CV 08-5321 RSWL, 2009 WL 463971, at *5-6 (C.D. Cal. Jan. 13, 2009).  But here, plaintiff is not claiming ownership under the work-for-hire doctrine; he is claiming ownership as the author of JOINT.  Under these circumstances, where work-for-hire is not claimed as the plaintiff's basis for ownership, but is asserted as a defense against a plaintiff's claim of ownership as an author, courts have been reluctant to decide the issue on a motion to dismiss. See, e.g., Wolf v. Travolta, No. 2:14-cv-00938-CAS (VBKx), 2014 WL 2472254, at *4 (C.D. Cal. June 2, 2014).  Indeed, in the face of Roy's registration certificate, which is "prima facie evidence of ownership and the validity of the copyright," Latin

Am. Music, 705 F.3d at 38, defendants bear the burden of proof
on the work-for-hire issue, see id., which suggests that summary
judgment is the proper procedural posture for ruling on that
issue.  Similarly, both defendants' estoppel argument and their
argument based upon an implied irrevocable license are
affirmative defenses on which they bear a burden of proof.  See
John G. Danielson, Inc. v. Winchester-Conant Props., Inc., 322
F.3d 26, 44 (1st Cir. 2003) (estoppel); Estate of Hevia v.
Portrio Corp., 602 F.3d 34, 41 (1st Cir. 2010) (implied
license).  Thus, as with defendants' work-for-hire argument,
their other two defenses are better suited for resolution at
summary judgment.  Finally, I note that in Le, all three of the
theories that defendants invoke were resolved on summary
judgment, not on a motion to dismiss.  Accordingly, to the
extent that plaintiff seeks relief beyond monetary damages for
copyright infringement, I recommend that defendant's motion to
dismiss be denied.

    B. Claim #9

    In claim #9, plaintiff asserts that all four defendants
deprived him a protected property right without due process of
law, in violation of the Fourteenth Amendment, by continuing to
use the JOINT software after he served them with a cease-and

desist notice.  As with Nichols in claim #1, plaintiff is

asserting claim #9 against the individual defendants in both

their personal and official capacities.  He frames his claim

this way:

> Defendants failed to comply with the plaintiff's
> cease-and-desist notice that asserted his control over
> his copyright (property).  Insofar as the demand was
> ignored, the defendants infringed on this property
> right from May of 2013 to mid-January of 2014 (when
> they actually stopped using JOINT).  . . .  Pre-
> deprivation due process was not feasible as the acts
> were unpredictable.  Post-deprivation due process
> remedies are not available through state courts.

Am. Civ. Compl. 12.  While the complaint does not say as much, I

will presume that claim #9 has been brought under the aegis of

42 U.S.C. § 1983.

Defendants seek dismissal of claim #9, but because

defendants' memorandum of law is organized on a defense-by-

defense basis rather than a claim-by-claim basis, the legal

basis for their request for dismissal is not especially clear.

As best I can tell, defendants argue that: (1) plaintiff cannot

state a due-process claim because he had no property interest in

the copyright in JOINT, owing to JOINT's status as a work for

hire, and because he granted the DOC an irrevocable license to

the JOINT software; (2) plaintiff is equitably estopped from

bringing a Fourteenth Amendment claim; (3) Nichols, Wrenn, and

Gerry are entitled to qualified immunity from claims brought against them in their individual capacities; (4) the complaint fails to allege any conduct by Gerry or Wrenn that would make them liable for a due-process violation; and (5) the DOC, and Nichols, Wrenn, and Gerry, in their official capacities, are entitled to sovereign immunity from an award of damages.

### 1. Qualified Immunity

Nichols, Wrenn, and Gerry, in their individual capacities, should be granted qualified immunity from plaintiff's due-process claim.  I have already recommended granting Nichols qualified immunity from plaintiff's copyright-infringement claim, on grounds that a reasonable official in Nichols's position would not have understood that he was violating the Copyright Act by engaging in the conduct alleged in claim #1. Because plaintiff's due-process claim rests upon the asserted deprivation of a property right that consisted of the copyright in JOINT, a reasonable official standing in the shoes of Nichols, Wrenn, or Gerry would not have understood that the conduct with which they are charged violated plaintiff's due-process rights.  Accordingly, I recommend that all three individual defendants, in their individual capacities, be granted qualified immunity from plaintiff's due-process claim.

24

### 2. Sovereign Immunity

The DOC, and the individual defendants in their official capacities, should be granted sovereign immunity from plaintiff's claim for damages resulting from their purported due-process violation.  In a recent case from the First Circuit, a builder that was debarred from bidding on public projects, and that had a bid rejected, sued the state agency responsible for the foregoing decisions, claiming a violation of its federal-due process rights.  See Brait Builders, 644 F.3d at 7–8.  The court of appeals dismissed that claim:

> DCAM is the only defendant.  "The Supreme Court has clearly said that the Eleventh Amendment bars federal suits by citizens against the state or state agencies. . . ." O'Neill v. Baker, 210 F.3d 41, 47 (1st Cir. 2000).  Therefore, "[u]nless a State has waived its Eleventh Amendment immunity or Congress has overridden it, . . . a State cannot be sued directly in its own name regardless of the relief sought." Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985) (citing Alabama v. Pugh, 438 U.S. 781 (1978)).  Pursuant to these principles, it is perfectly clear that Brait's claims in the complaint are barred by the Eleventh Amendment, since Brait sued DCAM in the latter's own name.  See Virginia Office for Protection and Advocacy v. Stewart, 131 S. Ct. 1632, 1637–38 (2011).

Id. at 11 (footnotes and parallel citations omitted).  The reasoning of Brait Builders applies with equal force to plaintiff's due-process claim against the DOC.  It also applies to his official-capacity claims against the three individual

defendants.  See Davidson, 749 F.3d at 27.  Accordingly, I recommend that the DOC and all three individual defendants, in their official capacities, be granted sovereign immunity from plaintiff's claims for damages resulting from the due-process violations he asserts.  However, for the same reasons that apply to plaintiff's copyright-infringement claim, I recommend denying defendants' motion to dismiss plaintiff's claims for relief other than monetary damages for his due-process claim.

C. Claim #6 & Claim #7

Claim #6 is a state-law claim against the DOC and Nichols for conversion, based upon their retention of at least three physical copies of JOINT.  Claim #7 is a state-law claim against the same two defendants for unjust enrichment, based upon "their use of JOINT in running the DOC's for-profit business activities without providing any compensation for either its development, its purchase value, or its ongoing use."  Am. Civ. Compl. (doc. no. 45) 12.  Again, the organization of defendants' memorandum of law makes it difficult, at best, to discern the legal basis for their motion to dismiss those claims.  Defendants may be relying upon the estoppel and implied-license theories from Le, see Defs.' Mem. of Law (doc. no. 46-1) 2, but they develop no argument that would allow the court to adapt those theories from

the copyright-infringement claims in Le to the state-law claims
in this case.  In any event, as to claim #6 and claim #7, I
recommend denying defendants' motion to dismiss.

## IV. Conclusion

For the reasons detailed above, I recommend that
defendants' motion to dismiss, document no. 46, be granted in
part and denied in part.  Specifically, I recommend that this
case should now be limited to: (1) a claim for injunctive relief
for copyright infringement against the DOC and Nichols in his
official capacity; (2) a claim for injunctive relief for a due-
process violation against the DOC and the individual defendants
in their official capacities; (3) a claim for conversion against
the DOC and Nichols; and (4) a claim for unjust enrichment
against the DOC and Nichols.

Any objections to this report and recommendation must be
filed within fourteen days of receipt of this notice.  See Fed.
R. Civ. P. 72(b)(2).  Failure to file objections within the
specified time waives the right to appeal the district court's
order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57
(1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch.
Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st

Cir. 2010) (only issues fairly raised by objections to
magistrate judge's report are subject to review by district
court; issues not preserved by such objection are precluded on
appeal).

_Andrea K. Johnstone_
Andrea K. Johnstone
United States Magistrate Judge

July 8, 2015

cc:  Steven J. Roy, pro se
     Thomas J. Donovan, Esq.
     Francis C. Fredericks, Esq.